IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CYNTHIA S. VICTOR | ) Case No.: 2:15-MC-2198-VEH |
| | ) |
| Debtors. | ) |
| | ) |

# MEMORANDUM OPINION AND ORDER

This miscellaneous matter relates to bankruptcy petition no. 13-04083-TOM-7, and adversary proceeding no. AP 15-00073-TOM, which are pending in the United States Bankruptcy Court for the Northern District of Alabama, Southern Division. (Doc. 1-3). Pending before this court is Defendant Blue Cross and Blue Shield of Alabama's ("Blue Cross"), Motion to Withdraw Reference (Doc. 1-3) (the "Motion") filed on December 4, 2015. The Motion has been opposed by the Plaintiff in interpleader, Neal & Harwell, PLC ("Neal & Harwell") ("Objection to Motion", doc. 6). Blue Cross has replied. ("Reply", doc. 8).[1] For the reasons stated herein, the Motion will be denied.

## I. BACKGROUND

Neal & Harwell, a law firm located in Birmingham, Alabama, represented

---

[1] The Trustee has not filed in support of or objection to the Motion.

Cynthia S. Victor ("Mrs. Victor") and her husband ("Mr. Victor") in a personal injury action litigated in Tennessee. That action that arose from an April 18, 2001, motor vehicle accident that occurred in Tennessee and that caused Mrs. Victor to sustain personal injuries,[2] for which she received medical treatment which was paid for by Blue Cross under an ERISA group health plan. Blue Cross knew about the Tennessee lawsuit and asserted a subrogation lien in the amount of $25,129.97 against any recovery from that lawsuit. Neal & Harwell was aware of Blue Cross's subrogation claim. In 2005, Neal & Harwell settled the claims of Mrs. Victor and of Mr. Victor, received the settlement proceeds, and disbursed the Victors' portion to them, retaining $25,129.97 as a "Subrogation Reserve" based on Blue Cross's subrogation claim. In May of 2005, Neal & Harwell attempted to settle Blue Cross's subrogation claim for $10,000. Blue Cross never responded to that offer.

In September of 2013, Mrs. Victor (hereinafter the "Debtor"), through different counsel, filed in the United States Bankruptcy Court for the Northern District of Alabama her Voluntary Petition seeking protection under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq*. That action (the "Bankruptcy") was assigned case number 13-04083. She received her discharge on December 27, 2013.

On May 29, 2015, Neal & Harwell learned of Debtor's Bankruptcy and, on

---

[2] Mr. Victor apparently asserted only a loss of consortium claim.

2

December 1, 2015, it filed a Complaint for Interpleader Relief within the Bankruptcy case. The named defendants were Mrs. Victor, Mr. Victor, the Chapter 7 trustee (the "Trustee') and Blue Cross. The Interpleader Complaint seeks to interplead the $25,129.97 Subrogation Reserve and to have the Bankruptcy Court determine to whom that amount should be disbursed: Mrs. Victor, Mr. Victor, the Trustee, and/or Blue Cross, subject to a deduction for Neal & Harwell for those litigation fees and expenses incurred by Neal & Harwell in connection with the Interpleader proceeding.[3]

    Neither Mrs. Victor nor Mr. Victor responded to the Interpleader Complaint. The Trustee filed a Response and Claim alleging that the Subrogation Reserve is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a) and that, as property of the estate, the Subrogation Reserve is due to be turned over to him pursuant to 11 U.S.C. § 542. Blue Cross filed an Answer and Counterclaims, asserting that it is entitled to the Subrogation Reserve "pursuant to ... its contractual rights of subrogation and reimbursement as well as its equitable lien on, and security

---

[3] In May of 2005, Neal & Harwell told Blue Cross that it had handled the personal injury case on a one-third contingency fee basis and stated that, after pro rata deduction of fees, the Blue Cross subrogation claim is $16,533.31 ($25,129.97 - $8376.66). Neal & Harwell then stated their belief that a $10,000 payment to satisfy the subrogation claim would be fair. It does not appear that Neal & Harwell is seeking any portion the Subrogation Reserve as a "pro rata" payment of fees for the personal injury action which resulted in the settlement.

interest in, the Subrogation Reserve." (Answer and Counterclaims, doc. 1-7, ¶ 11). Blue Cross further asserts claims for "a construct[ive] trust and equitable lien on the settlement funds being held in Neal & Harwell's trust account, plus accrued interest, and to receive appropriate equitable restitution" (Count One) (*Id*. at ¶ 23); and claims of "unjust enrich[ment]" against Neal & Harwell for its having "us[ed] a portion of Blue Cross's recovery to pay its own fee." (Count Two) (*Id*. at ¶ 30).[4] Neal & Harwell has answered Blue Cross's counterclaims. (Answer to Counterclaims, doc. 1-11).

## II. APPLICABLE LEGAL STANDARDS

District courts possess "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). However, district courts can provide that cases that arise under title 11, arise in title 11, or relate to a case under title 11 may be referred to the bankruptcy court of that district. 28 U.S.C. § 157(a). This court has entered a general order of reference automatically referring all such cases to the bankruptcy judges for this district. *US v. ILCO, Inc.*, 48 B.R. 1016, 1020 (N.D.Ala.1985).

However, 28 U.S.C. § 157(d) provides for the withdrawal of the reference

---

[4] Blue Cross claims subrogation in the amount of $36,371.34, but the Subrogation Reserve is only $25,129.97.

4

under certain circumstances.[5] Withdrawal may be either mandatory or permissive. A district court is required to withdraw the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

### III. ISSUES PRESENTED

Although Blue Cross never explicitly states so, it appears that it initially asserted only that withdrawal was mandatory. (*See* doc. 1-3 at ¶ 4) ("Because this case involves substantial and material consideration of federal non-bankruptcy law, cause exists under 28 U.S.C. § 157(d) to withdraw the reference as to this adversary proceeding."). After Neal & Harwell opposed withdrawal, saying that it was not mandatory and that this court should not exercise its permissive discretion in favor of withdrawal (Objection, doc. 6), Blue Cross replied that withdrawal is indeed mandatory but that, if this court disagrees, it should permissively withdraw the

---

[5] Section 157(d) provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

reference. (Response, doc. 8).

## IV. ANALYSIS

A. <u>Withdrawal Is Not Mandatory</u>

In its Motion, Blue Cross conclusively states that withdrawal is mandatory because "the resolution of the issues in the Complaint turn on the interpretation and application of ERISA." In support, Blue Cross asserts that the following issues must be determined: (1) the limitations period applicable to Blue Cross's subrogation claim; and (2) when that limitations period began. Other than stating that "29 U.S.C. § 1132(a)(3) contains no express limitations period," Blue Cross initially provides <u>no</u> analysis why ERISA must be "interpreted," much less that there are open questions of federal non-bankruptcy law that this court must decide.[6]

After Neal & Harwell persuasively argue that mandatory withdrawal is not appropriate "because this action is a garden-variety interpleader an subrogation action that, at best, only tangentially implicates any right or remedy of [Blue Cross] contemplated by ERISA", and that "there is also otherwise no cause for this Court to exercise its discretion to withdraw the order of reference", Blue Cross for the first time presents cases to support its argument that ERISA is even implicated.

---

[6] Certainly, Blue Cross's subrogation rights arise out of benefits Blue Cross provided the Debtor under an ERISA plan. But that does not mean that Blue Cross's subrogation rights require an interpretation of ERISA.

However, Blue Cross still wholly fails to show that ERISA must be "interpreted."

This court is aware that some courts, citing the plain language of the Section 157(d), have determined that withdrawal is mandatory if resolution of the dispute requires <u>any</u> consideration of a non-title 11 federal law (*see, e.g., In re Kiefer*, 276 B.R. 196, 199 (E.D.Mich.2002). However, the majority of courts to consider the issue have found that "withdrawal is mandatory only if the court can make an affirmative determination that resolution of the claims will require substantial and material consideration of those non-Code statutes which have more than a *de minimis* impact on interstate commerce." *In re Price*, No. 2:06-mc-3317–MHT, 2007 WL 2332536, at *2 (M.D.Ala. Aug. 13, 2007) (quoting *In re TPI Intern. Airways*, 222 B.R. 663, 667 (S.D.Ga.1998) (internal quotations omitted); *see also Truss v. LVNV Funding, LLC,* 532 B.R. 373 (N.D. Ala. 2015) (collecting cases); *Thompson v. LVNV Funding, LLC,* 534 B.R. 816 (N.D.Ala. 2015); *Abrahams v. Phil–Con Services, LLC*, No. 10–0326–WS–N, 2010 WL 4875581 (S.D.Ala. Nov. 23, 2010). The majority approach holds that, for withdrawal to be warranted, the issue must "require more than the mere application of well-settled or 'hornbook' non-bankruptcy law; significant interpretation of the non-Code statute must be required." *Abrahams*, 2010 WL 4875581, at *2 (quoting *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953 (7th Cir.1996)). This court will, along with the other

district courts in this circuit, follow the majority approach. Withdrawal of the reference is not mandatory.

### B. Permissive Withdrawal Is Not Appropriate

This court agrees with the parties that permissive withdrawal of the reference is for "cause shown." Further, Eleventh Circuit case law makes clear that, although "'[c]ause' is not defined, ... this is not an 'empty requirement.'" *Envtl. Litig. Grp., P.C. v. Crawford (In re Price)*, Nos. 05-04807-TOM-13, 07-00017, 2007 Bankr. LEXIS 1366 at * 26 (U.S. Bankr. N.D. Ala. Apr. 16, 2007) (quoting *In re Parklane/Atlanta Venture*, 927 F.2d 532, 536 (11th Cir. 1991)). The parties also agree that the factors for this court to consider in determining whether to withdraw the reference for cause shown are: (1) advancing uniformity in the administration of bankruptcy law; (2) prevention of forum shopping; (3) conservation of the parties' resources; and (4) facilitation of the bankruptcy process. Blue Cross cites the following additional factors: (1) whether the claim is core or non-core; (2) efficient use of judicial resources; (3) whether a jury was demanded, and (4) prevention of delay.

The court has considered all of these factors and finds that withdrawal is inappropriate. Blue Cross argues that two of these seven factors favor withdrawal: (1) conservation of the parties' resources; and (2) facilitation of the bankruptcy

process. As to the conservation issue, Blue Cross's argument is couched in terms and phrases such as "if" and "would likely". This is entirely too speculative to persuade the court that the parties' resources would be conserved by withdrawal of the reference. As to facilitation of the bankruptcy process, Blue Cross merely argues that the losing party can appeal an adverse decision of the bankruptcy court to the district court. If this argument were persuasive, then this district might as well withdraw its General Order of Reference.

The court notes that the pending Motion was filed after two hearings before the bankruptcy judge and immediately after the bankruptcy judge stated that she would probably abstain from this case and that the parties should litigate in state court. This court respectfully disagrees that abstention is appropriate. The Trustee has claimed the interpleaded funds. If those funds are ultimately paid to the Trustee, then those additional funds should be administered under bankruptcy law to pay Debtor's remaining creditors in her bankruptcy proceeding. A state court would have neither the expertise nor the jurisdiction to accomplish that. Because the bankruptcy court is uniquely qualified and able to determine and administer this action, this court finds that abstention is not appropriate.[7]

---

[7] In making this observation, this court expresses no opinion as to the merits of the various claims and counterclaims.

Additionally, the timing of the Motion indicates to this court that the purpose of the Motion is to forum shop. Thus, the goal of preventing forum-shopping cuts strongly against withdrawing the reference.

No party argues that this is not a "core" claim. Nor has a jury been demanded. Thus, both of these factors cut against withdrawing the reference.

## V. CONCLUSION

For the reasons set out above, the court finds that withdrawal of the reference is not mandatory. The court further finds that permissive withdrawal of the reference is not appropriate. Accordingly, the Motion is **DENIED**.

**DONE** and **ORDERED** this the 26th day of July, 2016.

/s/ VEHopkins
_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge